UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-81494-CIV-REINHART

FRANCES LUCILLE HOWELL,

                       Plaintiff,

v.

ANDREW SAUL, Commissioner
of Social Security,

                       Defendant.
_____/


## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 21) AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (22)

Currently before the Court are the parties' cross-motions for summary judgment. DE 21, 22. The parties consented to have the undersigned preside over the final disposition of this matter. DE 12. In addition to the motions, the Court has reviewed Plaintiff's response/reply papers. DE 24. The issue is whether the record contains substantial evidence to support the denial of disability benefits to Plaintiff Frances Lucille Howell.

For the reasons stated below, the undersigned finds that there is not substantial evidence in the record to support the denial of disability benefits to Plaintiff. Accordingly, Plaintiff's Motion for Summary Judgment (DE 21) is **GRANTED,** Defendant's Motion for Summary Judgment (DE 22) is **DENIED** and that the matter is **REMANDED** for further proceedings consistent with this decision.

## **BACKGROUND**

On November 17, 2014, Plaintiff filed an application for supplemental security income (SSI), alleging a period of disability beginning on January 1, 2014. R. 24.[1] Plaintiff had a hearing before an Administrative Law Judge (ALJ) on June 9, 2017. The ALJ denied Plaintiff's application for benefits in a decision dated September 25, 2017 (R. 24-33) and after its review, the Appeals Council upheld this decision on August 31, 2018. R. 1-3.

The record contains the following facts adduced from Plaintiff's testimony at the hearing, and her treatment records, as well as the opinions of state agency consulting physicians, and a vocational expert.

*Plaintiff's Testimony*

At the time of her hearing on June 9, 2017, Plaintiff was 53 years old and it is believed that she has a 9th grade education, although she testified that she does not remember. R. 41. Plaintiff lived with her husband in a recreational vehicle and had two grown children who did not live with them. R. 43. Plaintiff had a driver's license at one time, but it was suspended several years earlier, so her friend drove her to the hearing. R. 44. When the ALJ asked Plaintiff what prevented her from working, Plaintiff responded, "my head has got a big old knot right here. I got a hernia. And I got a knot in the back of my neck." R. 45. Plaintiff identified the pain from her hernia as "in the middle of my breastbone." R. 45. Plaintiff suffers from daily headaches and believes that they and the "knot . . . on her skull" are related to an old head injury, but according to Plaintiff, "the doctors, a long, long time ago, told me that they couldn't find anything." R. 50. Plaintiff stated that she had no other medical conditions that prevented her from working (R. 45-46), although she

---

[1] This citation is to the record of the administrative proceeding filed at DE 17.

complained about pain in her leg that affects her ability to stand and walk. R. 52-53. Plaintiff testified that she was not taking any medication for her pain and that she had not been treated at any medical facility for over two years because she does not have insurance. R. 46, 55.

Plaintiff testified that she bathes and dresses herself, grocery shops, cooks and washes dishes, does laundry, vacuums and dusts. R. 47-48. Plaintiff does not read newspapers, magazines or books and does not use a computer, although she has a smartphone. R. 48-49. She speaks on the telephone to her husband, daughter and son, but does not visit with family or friends. R. 48-49. Plaintiff testified that she does not go to the movies or church, does not go out to eat, and is not involved with any clubs or hobbies. R. 49. Plaintiff testified that she does not know how to read and that although she can recognize some words and read short sentences, her ability to understand what she reads is "so-so." R. 51. Her husband reads the mail she receives from SSA to her. R. 50-51. Plaintiff stated that she does not know how to write a check or get a money order. R. 49. Plaintiff stated that her memory is "terrible" and that her daughter tells her about things Plaintiff did to her that Plaintiff does not remember. R. 51-52. When asked if she worked in 2016, Plaintiff stated "I really don't know," but said that if she reported any income, it was "[p]robably, housecleaning." R. 42. Plaintiff also completed an SSA Function Report in April 2015, wherein she stated that she was "not great" at following spoken instructions and did not get along well with authority figures. R. 216-17.

*Medical Records*

1. <u>Treating Physician</u>

In December 2012, Plaintiff presented at JFK Internal Medicine Facility complaining of headaches that had been worsening in recent months. R. 267. Plaintiff was diagnosed with Lipoma on her left forehead "causing worsening of her symptoms." *Id.* The treatment note indicates that

3

Plaintiff was uninsured and that the facility was awaiting medical coverage "to be able to refer her to surgery. Meanwhile, she reports relief of her [symptoms] with [medication]." *Id.* Similarly, the treatment notes from Plaintiff's follow-up examination the next month stated that her medication resolved her symptoms. R. 264. In February 2013, Plaintiff reported that the medication resulted in "improvement" and "relieved pain." R. 261. The treatment note reflects that Plaintiff's medical providers would "[c]onsider a CT of brain if [headache] does not improve or there is change in the pattern of the headache." R. 262. In April 2013, the treatment notes regarding Plaintiff's "frontal headache secondary to forehead lipoma" states that Plaintiff "reported pain is well controlled" with current medication. R. 250.

    2. <u>Dr. Ilene Kaskel, State Consulting Psychologist</u>

On August 28, 2013, Dr. Kaskel performed a psychological evaluation of Plaintiff at the request of the Division of Disability Determinations. She noted that while Plaintiff was "generally cooperative" and "appeared to put forth appropriate effort into the tasks, she exhibited reduced comprehension" and "had difficulties recalling information regarding her history." R. 278. Plaintiff stated that she sought SSI benefits due to brain tumors, but when questioned about her symptoms, Plaintiff was "somewhat vague and unclear. She reported that she began experiencing pain in approximately 1997 after a car accident." *Id.* According to Plaintiff, she suffered a head injury in the car accident and is unable to remember anything that occurred prior to the accident, except she remembers her mother. R. 280. Plaintiff stated that she had a lump on her neck and forehead and a hernia on her breastbone and three brain tumors. R. 279. She complained of fatigue, headaches, dizziness, anxiety, difficulties concentrating, and forgetfulness. R. 279-80. Plaintiff stated that she could bathe and dress herself without assistance, did housecleaning, grocery shopped and prepared food, and was capable of paying her own bills. R. 278. Plaintiff

4

stated that she was homeless and was staying with various friends. R. 279. Plaintiff denied any history of psychiatric or psychotherapeutic treatment, hospitalizations or diagnoses. R. 280.

Dr. Kaskel performed a mental status examination and found Plaintiff "alert and oriented" but that her "attention and concentration faculties were impaired." R. 281. Plaintiff's "immediate recall was intact," but her "recent, long-term recall was impaired" and her "remote recall was reduced." *Id.* Plaintiff "exhibited difficulties with respect to general knowledge, as although she was able to accurately identify the current president of the United States, she was unable to accurately identify the capital of Italy, capital [of] Florida, immediate, past president of the United States, number of weeks in one year, or chemical makeup of water." *Id.* Plaintiff's "abstraction ability was impaired, as she was unable to accurately interpret three common proverbs." *Id.* Her "thought processes were clear and goal directed without evidence of loose associations, tangentiality, or circumstantiality" but her "insight and judgment were reduced." *Id.*

Dr. Kaskel diagnosed Plaintiff with adjustment disorder mixed with anxiety and depressed mood, amnestic disorder due to head injury, and borderline intellectual functioning. R. 281. Dr. Kaskel assessed Plaintiff with a Global Assessment of Functioning (GAF) score of 50. R. 282.[2] She concluded that due to Plaintiff's "significant difficulties with respect to recall" and her "reduced cognitive ability," her prognosis was "guarded, as she is experiencing anxiety and depressive symptoms as a result of difficulties adjusting to her physical ailments." R. 282. Dr. Kaskel recommended a psychiatric evaluation and outpatient psychotherapeutic services. *Id.*

---

[2] In her motion papers, Plaintiff notes that GAF scores were used historically to measure "overall severity of psychiatric disturbance, and that a GAF score of between 41-50 indicated serious impairments. However, in 2013, the American Psychiatric Association stopped using GAF scores due to "lack of clarity and questionable psychometrics in routine practice." DE. 21 at 6.

5

3. Dr. Steven Kanner

On January 13, 2015, Dr. Steven Kanner examined Plaintiff at the request of the Office of Disability Determinations. R 315. Plaintiff told Dr. Kanner that she cannot work because she has neck pain that radiates down to the base of her spine. *Id.* Dr. Kanner noted that Plaintiff was alert, oriented, appropriately attired and cooperative with no overt psychiatric manifestations. R. 316. Dr. Kanner noted a cyst on Plaintiff's forehead. *Id.* Dr. Kanner found Plaintiff's neck to be "supple without JVD, bruits or thyromegally. No cervical adenopathy is noted." *Id.* With regard to Plaintiff's spine, Dr. Kanner found "no evidence of spasm, lordosis or severe kyphosis" and that Plaintiff "was able to flex, extend and side-bend the cervical and lumbosacral spine through the normal range of motion." R. 317. Dr. Kanner found "no motor reflex or sensory deficits corresponding to any disc group." *Id.* According to Dr. Kanner, "the patient does not have any brain tumors," "she did not demonstrate any overt psychiatric dysfunction," and "her memory was intact and she interacted well" during his examination. *Id.* Dr. Kanner concluded that Plaintiff could sit, stand, and walk, as well as lift, carry and handle objects without difficulty. R. 317.

*Vocational Expert*

At the hearing, the ALJ questioned a vocational expert about Plaintiff's ability to resume her past relevant work as a house cleaner. The vocational expert opined that even with Plaintiff's minimal education, which resulted in a limited ability to understand, remember and carry out simple instructions, Plaintiff could perform her past relevant work as a house cleaner. R. 56-58.

*ALJ's Decision dated September 25, 2017*

The ALJ found that Plaintiff had the following combination of severe impairments: borderline intellectual functioning and amnestic disorder due to head injury. R. 26. The ALJ found that "these impairments cause more than a minimal functional limitation on the claimant's

ability to engage in work-related activities and are thus considered to be 'severe . . .'" R. 27.[3] Nevertheless, the ALJ concluded that Plaintiff's impairments did not meet the severity of the impairments listed in the federal regulations. Specifically, the ALJ found that Plaintiff's "intellectual disorder does not meet or medically equal the criteria of listing 12.05 because [Plaintiff] is not dependent upon others for personal needs and the disorder did not manifest itself before age 22." R. 28. The ALJ also considered whether Plaintiff's mental impairments satisfied the Paragraph B and Paragraph C criteria of listing 12.20 and concluded that they did not. To satisfy Paragraph B criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; or (4) adapting or managing themselves. R. 28.

Here, the ALJ found that Plaintiff only had moderate limitations in her ability to understand, remember and apply information. The ALJ noted that Plaintiff complained of significant difficulties in her ability to recall and that the state's consulting psychologist opined that Plaintiff's presentation during the evaluation was suggestive of some limitations in cognitive capacity. However, the examination of the State's consulting physician, Dr. Kanner, found that Plaintiff's memory was intact. R. 28

The ALJ found that Plaintiff had no limitations in interacting with others and based this on her testimony that she lived with her husband, maintained communication with her children and had a friend bring her to the hearing. Additionally, Dr. Kanner noted that Plaintiff interacted well during the interview. R. 28.

---

[3] The ALJ found that Plaintiff's left knee fracture was healed and that her hemorrhoids and depression were non-severe. R. 27.

7

With regard to concentrating, persisting and maintaining pace as well as adapting or managing oneself, the ALJ found Plaintiff to have only mild limitations. The ALJ noted that Plaintiff worked full-time as a house cleaner for most of 2016, during her period of alleged disability. R. 28. Moreover, Plaintiff testified that she could bathe and dress herself without assistance; that she did her own grocery shopping, cooked, and performed household chores. R. 28. Based on these assessments, the ALJ concluded that Plaintiff did not satisfy the Paragraph B criteria.

Likewise, the ALJ found that Plaintiff did not satisfy the Paragraph C criteria because there was no evidence that she had a serious and persistent mental disorder for at least two years, nor was there evidence of her involvement in ongoing medical treatment or mental health therapy, nor evidence that Plaintiff suffered from minimal capacity to adapt to changes. R. 29.

The ALJ accorded great weight to the opinion of the state's consulting examiner, Dr. Kanner. The ALJ did not specify what weight she attributed to Dr. Kaskel or the treating providers at JFK Internal Medicine Facility.

The ALJ noted that "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled" and concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms were "not entirely consistent with the medical evidence . . ." R. 31. Moreover, the ALJ discounted the alleged severity of Plaintiff's complaints because "claimant did not seek medical treatment, emergent or follow-up, for her allegedly severe physical conditions for a prolonged period of time." R. 32-33.

Based on these findings and the vocational expert's opinion, the ALJ concluded that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff "is able to understand, remember and

carry out simple instructions." R. 29. Thus, the ALJ concluded that Plaintiff could perform her past relevant work as a house cleaner. R. 33.

*Appeals Council's Review*

On June 1, 2018, the Appeals Council (AC) granted Plaintiff's request for review and adopted the ALJ's findings under steps 1, 2 and 3 of the sequential evaluation. R. 4. The AC also adopted the ALJ's determination of Plaintiffs residual functional capacity (RFC). R. 5. In evaluating Plaintiff's RFC, the AC considered the opinion of the state's consultative examining psychologist, Dr. Kaskel, to which it attributed "some weight." R. 5. The AC noted that Dr. Kaskel found Plaintiff had difficulties with recall, attention and concentration as well as a reduced cognitive ability, but observed that Dr. Kaskel did not specify how these limitations would affect Plaintiff's work-related abilities. R. 5. The AC disagreed with the ALJ's determination that Plaintiff was capable of performing her past relevant work as a house cleaner because Plaintiff did not perform any work at substantial gainful activity levels in the past fifteen years, and so she had no past relevant work. R. 5. Accordingly, the AC concluded that Plaintiff could perform unskilled work at all exertional levels, and that her limited ability to understand, remember and carry out simple instructions had "little or no effect on the occupational base of unskilled work." R. 6. Thus, the AC concluded that Plaintiff was "not disabled." R. 6.

*Plaintiff's Claims*

In her motion for summary judgment, Plaintiff argues that the ALJ did not fulfill his duty to develop the record regarding Plaintiff's mental impairments, that the AC did not properly consider the GAF score assessed by Dr. Kaskel, and that the matter was decided by an unconstitutionally appointed ALJ. DE 21.

## STANDARD OF REVIEW

This Court's review of the factual findings in disability cases is limited to an inquiry into whether substantial evidence exists to support the ALJ's findings and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). If the ALJ's decision is supported by substantial competent evidence from the record as a whole, a court will not disturb that decision. Neither may a court reweigh the evidence nor substitute its judgment for that of the ALJ. *See Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Although factual findings enjoy such deference, a court is free to review the ALJ's legal analysis and conclusions *de novo*. *See Ingram v. Comm'r*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## DISCUSSION

### A. The Five Step Framework

A person who applies for social security disability benefits must prove his disability before being entitled to those benefits. *See* 20 C.F.R. § 404.1512. In determining disability, the ALJ considers a five-step evaluation process. *See* 20 C.F.R. § 404.1520. First, the claimant must prove he is not currently engaged in substantial gainful activity. *Id.* Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ." *Id.* Third, the claimant must show he is disabled by proving that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* Before considering step four, the ALJ must determine the claimant's

residual functional capacity (RFC), meaning his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *Id.* At step four, the claimant bears the burden of proving that he does not have the RFC to perform past relevant work. *Id.* If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's RFC, age, education, and past work experience, that he is capable of performing other work. *Id.* If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work. *Id.*

### B. Is there Substantial Evidence to Support the ALJ's Determination?

A court may reverse an ALJ's decision "only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Here, Plaintiff contends that the ALJ did not fulfill her duty to fully and fairly develop the record regarding Plaintiff's mental impairments before determining at Step Three that Plaintiff's impairments did not satisfy those listed in the federal regulations.

The federal regulations impose a duty on the ALJ to "develop the medical record fully and fairly" (*Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988)), and provide that an ALJ may order a consultative examination when warranted. 20 C.F.R. Sec. 404.1517 (1983). *See also Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) ("Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."). Indeed, the Eleventh Circuit has found it is "reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Reeves v. Heckler*, 734 F.2d 519, 522, n.1 (11th Cir. 1984) (*citing Ford v. Secretary of Health and Human Services*, 659 F.2d 66, 69 (5th Cir. 1981) ("In fulfilling his duty to conduct a full and fair inquiry, the [ALJ] is not required to order a consultative examination unless the record establishes that such

an examination is necessary . . ."). "In evaluating the necessity for a remand, we are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). "Such gaps exist when omitted medical records are relevant to the applicant's claim of disability and the missing evidence might sustain the contention of an inability to work." *Rothfeldt v. Acting Comm'r of the Soc. Sec. Admin.*, 669 F. App'x 964, 967 (11th Cir. 2016) (case remanded because ALJ failed to order an IQ test and the Court could not determine whether plaintiff had "significantly subaverage general intellectual functioning" to satisfy the criteria for Paragraph C of § 12.05).

Here, Dr. Kaskel, SSA's own consultative examining psychologist, diagnosed Plaintiff with amnestic disorder due to head injury as well as borderline intellectual functioning and assigned a GAF score of 50, which traditionally signaled serious impairment.[4] Dr. Kaskel's prognosis of Plaintiff was "guarded" and she recommended that Plaintiff undergo a psychiatric evaluation. The ALJ was required to articulate the weight she gave to Dr. Kaskel's opinion. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("ALJ must state with particularity the weight given to different medical opinions and the reasons therefor . . . [i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence" and remand is required).

Rather than address Dr. Kaskel's opinion and determine the weight to be accorded it along with an explanation, the ALJ ignored Dr. Kaskel's opinion, which is particularly troubling given

---

[4] In *Anderson v. Astrue,* the court relied on testimony that "a GAF score of 50 generally is considered the cut-off point for the capacity to perform the mental demands of work. GAF scores below 50 evince no ability to work. A GAF score of 50 evinces the very minimum capacity to work, with the GAF score range of 50 to 60 evincing the ability to perform unskilled work." *Id.*, No. 12-14240-CIV, 2013 WL 12121496, at *5 (S.D. Fla. Apr. 5, 2013) (J. Lynch)

the dearth of medical records for this claimant. While this error was corrected at the appellate level (the AC attributed "some weight" to Dr. Kaskel's opinion), the fact remains that there was insufficient evidence to determine that Plaintiff was not disabled. Indeed, as the AC noted, Dr. Kaskel did not specify how Plaintiff's limitations would affect her work-related abilities, however, this deficiency in the record required further investigation and should not have been the end of the inquiry. Dr. Kaskel opined that Plaintiff should undergo a psychiatric evaluation, but the ALJ did not order this. *Cf. Good v. Astrue*, 240 F. App'x 399, 404 (11th Cir. 2007) (no error in ALJ's failure to order another exam where no other physician recommended an additional consultation, and the record was sufficiently developed for the ALJ to make a determination). At a minimum the ALJ should have obtained testimony from Dr. Kaskel about the implications of Plaintiff's mental impairments on her ability to work.

Defendant contends that Plaintiff "failed to show any prejudice resulting from the ALJ's failure to obtain additional consultative reports or otherwise further develop the record." DE. 22 at 5. However, as the Eleventh Circuit has noted, "[t]he lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits." *Brown v. Shalala*, 44 F.3d 931, 935–36 (11th Cir. 1995).

Given Dr. Kaskel's opinion regarding Plaintiff's memory loss, borderline intellectual functioning, and reduced cognitive abilities viewed in conjunction with Plaintiff's testimony about her amnesia, inability to read and comprehend, and extremely limited interactions with others, the Court finds that Plaintiff was prejudiced by the ALJ's failure to further develop the record.

Moreover, the ALJ relied upon Plaintiff's failure to seek additional treatment as evidence that her impairments were not as severe as she claimed, despite Plaintiff's testimony that her failure to seek treatment was due to her inability to afford it. The Eleventh Circuit has stated "We have

held that 'refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability,' and 'poverty excuses noncompliance.'" *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (quoting *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)). "Additionally, when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment." *Id.* Here, the treatment notes from the JFK Internal Medicine Facility repeatedly reference the need for surgery on Plaintiff's Lipoma to reduce her headaches. The treatment notes also indicate that Plaintiff was unable to afford surgery due to a lack of insurance. Dr. Kaskel also recommended further psychiatric evaluation and treatment, which Plaintiff likely did not pursue due to financial hardship. Contrary to the Eleventh Circuit's mandate, the ALJ did not make any determination about Plaintiff's ability to afford further treatment, and instead relied on her lack of treatment to discount her physical and mental impairments.

In sum, given the evidentiary gaps in the record and the deficiencies in the ALJ's decision, the Court is convinced that remand is appropriate. On remand the ALJ shall fully develop the record with additional psychiatric evaluations and intelligence testing of Plaintiff, shall specify what weight the ALJ gives to each care provider, and make a determination regarding Plaintiff's financial ability to afford any prescribed treatment.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (DE 22) is **DENIED**, Plaintiff's Motion for Summary Judgment (DE 21) is **GRANTED** and the matter is **REMANDED** for further proceedings consistent with this decision.

**DONE AND ORDERED** in Chambers this 21st day of February, 2020, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE